UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYISHA BENHAM, | No. C-09-2059 SC |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE |
| AURORA LOAN SERVICES; BNC MORTGAGE INC.; ROBERT E. WEISS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; UNITED HOME MORTGAGE CORPORATION; ASAD ZAFARI; KEITH HOUSTEAD; and DOES 1-20, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint and the Motion to Strike filed by Defendant Aurora Loan Services ("Aurora"). Docket Nos. 21 ("Mot. to Dismiss"), 22 ("Mot. to Strike").[1] Plaintiff Ayisha Benham ("Plaintiff" or "Benham") filed an Opposition to the Motion to Dismiss and the Motion to Strike. Docket No. 33 ("Opp'n").

---

[1] None of the other Defendants participated in these motions. However, the Court previously granted a separate Motion to Dismiss filed by Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). In the Order granting MERS' Motion to Dismiss ("September 1st Order"), Docket No. 31, the Court dismissed, only as to MERS, each cause of action that was alleged against MERS, and one cause of action was dismissed as to all parties, with prejudice. Id. at 12; see also Part IV.A.1, infra.

Aurora submitted a Reply. Docket No. 34. For the following reasons, the Court GRANTS the Motion to Dismiss and DENIES the Motion to Strike.

**II. BACKGROUND**

On August 2, 2006, Plaintiff received a mortgage loan for $430,000 from BNC Mortgage, Inc., secured by property located at 4350 Fran Way, Richmond, Contra Costa County, California. See MERS' Request for Judicial Notice ("MERS' RJN") Ex. 1 ("Deed of Trust").[2] MERS was listed as the nominee for lender, and the beneficiary of the Deed of Trust. Id. On May 3, 2007, Robert E. Weiss, Inc. ("Weiss") became the trustee under the Deed of Trust. Id. Ex. 2 ("Substitution of Trustee").

On May 10, 2007, Weiss issued a Notice of Default and Election to Sell Under Deed of Trust. Id. Ex. 3 ("Notice of Default"). On August 16, 2007, Weiss issued a Notice of Trustee's Sale indicating that the property would be sold on September 14, 2007. Id. Ex. 4 ("Notice of Trustee's Sale"). On August 23, 2007, MERS assigned all beneficial interest under the Deed of Trust to Aurora. Id. Ex. 5 ("Corporate Assignment of Deed of Trust"). The First Amended Complaint ("FAC"), Docket No. 12, also suggests that Aurora was the servicer of Benham's loan, as it reflects that Benham sent Aurora a Qualified Written Request

---

[2] MERS previously submitted a request for judicial notice in support of its earlier Motion to Dismiss, Docket No. 15, and this Court granted this request. See Sept. 1st Order at 2. These documents are as relevant to Aurora's Motion as they were to MERS', and the Court will continue to rely on these documents in the current Order.

2

pursuant to section 6(e) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605(e), which addresses the duties of loan servicers to respond to such requests. FAC ¶ 33.[3] Aurora concedes that it was indeed the loan servicer. Mot. at 3.

On September 13, 2007, Plaintiff filed a Chapter 11 bankruptcy petition in the Oakland Division of the Bankruptcy Court for the Northern District of California. MERS' RJN Ex. 6 ("Bankruptcy Petition No. 07-42959"). On October 27, 2008, the Bankruptcy Court granted MERS' motion for relief from the stay on foreclosure proceedings. Id. Docket No. 70. On January 23, 2009, Weiss issued a new Notice of Trustee's Sale, and the property was sold to Aurora on February 20, 2009. Id. Ex. 7 ("Second Notice of Trustee's Sale"); Ex. 8 ("Trustee's Deed Upon Sale").

In her FAC, Benham raises a total of ten causes of action against seven defendants. FAC ¶¶ 51-130. Aurora now moves to be dismissed from the case. The Motion to Dismiss challenges all causes of action that apply to Aurora. See Mot. to Dismiss at 8-19.

///

///

---

[3] Throughout her Opposition, Benham repeatedly challenges Aurora's status and relationship to the property, claiming that Aurora is a "stranger" or "unrelated third party" to the transaction. Opp'n at 6, 13. The Court rejects these arguments, as they are not supported by any factual allegations, and because they are directly contradicted by judicially noticed documents. Benham has not provided a reasonable basis to question the authenticity of the documents that clearly establish that Aurora was the assignee of all beneficial interests under the Deed of Trust. See Corporate Assignment of Deed of Trust at 1-2. In addition, Benham's own allegations strongly support the inference that Aurora was the servicer of Benham's loan. FAC ¶ 33.

3

### III. LEGAL STANDARD

#### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). With regard to well-pleaded factual allegations, the court should assume their truth, but a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). The court need not accept as true legal conclusions couched as factual allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.

#### B. Motion to Strike

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally regarded with disfavor. Ganley v. County of San Mateo, No. 06-3923, 2007 WL 902551, at *1 (N.D. Cal. Mar. 22, 2007). The essential function of a Rule 12(f) motion is

to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

**IV. DISCUSSION**
    **A. Motion to Dismiss**
        **1. Rosenthal Fair Debt Collection Practices Act ("RFDCPA")**

The Court previously dismissed Plaintiff's second cause of action for violation of the RFDCPA against all parties, with prejudice, based on the Motion to Dismiss filed by MERS and subsequent briefing. See Sept. 1st Order at 4-5, 12. Specifically, this Court found that Benham could not state a claim under the RFDCPA based on the foreclosure, because foreclosure is not considered "debt collection" under the Act. Id. at 5. In the context of Aurora's Motion to Dismiss, Benham states that she "understands this to mean the Court has dismissed this claim as related to the wrongful foreclosure cause of action only." Opp'n at 14. Benham argues that the FAC alleges not only that Defendants violated the RFDCPA by foreclosing on Benham's property, but also by "falsely stat[ing] the amount of a debt [and] increas[ing] the amount of a debt by including amounts that are not permitted by law or contract." Id.

While the Court is not willing to revisit its prior conclusion that Benham cannot state a claim under the RFDCPA based on the foreclosure, the Court will grant Benham leave to amend the

5

FAC to state a claim based on other activity.  In its current form, however, the FAC fails to state a claim against any party under the RFDCPA because it does not allege that any party is a debt collector, or a "person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection," as required by the statute.  Cal. Civ. Code § 1788.2(c); Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("[T]he RFDCPA applies only to debt collectors.").  Before stating a claim under the RFDCPA, Benham must identify which Defendants she believes to be governed by the statute, and allege a basis for concluding that these Defendants are "debt collectors."  This cause of action remains DISMISSED as to all parties, and Benham is granted leave to amend only if Benham can allege a breach of the statute by a "debt collector" that is distinct from foreclosure.

**2. Negligence**

Benham's third cause of action is for negligence.  FAC ¶¶ 66-71.  The Court dismisses this claim against Aurora for the same reasons that it dismissed it as to MERS in its September 1st Order.  See Sept. 1st Order at 5-7.  Specifically, the Court rejects Benham's attempt to state a claim without indicating which allegations apply specifically to Aurora.  The only duty of Aurora's that Benham cites in her Opposition is the general "duty not to harm," Opp'n at 16, and Benham does not explain, either precisely or generally, how Aurora breached this duty.

Benham has not identified any concrete acts or omissions committed by Aurora, except for acts that were apparently lawful.

6

The FAC only specifically alleges that Aurora failed to respond to a Qualified Written Request under RESPA, see FAC ¶ 33, which is fully addressed by a separate cause of action, see Part IV.A.3, infra. In addition, Benham faults Aurora for wrongfully participating in the trustee sale, FAC ¶ 121, which is also addressed as a separate cause of action, see Part IV.A.6, infra. Other than these two acts, the Court finds nothing in the FAC that might allow Aurora to prepare to defend against a claim for negligence. This cause of action must be DISMISSED WITHOUT PREJUDICE.

### 3. RESPA

Plaintiff's fourth cause of action is for violation of RESPA, 12 U.S.C. §§ 2605 et seq. Benham has alleged that "Defendants violated RESPA at the time of closing on the sale of the Property by failing to correctly and accurately comply with disclosure requirements." FAC ¶ 75. In addition, Benham claims that Defendants violated 12 U.S.C. § 2605(e)(2) "by failing and refusing to provide a written explanation or response to Plaintiff's Qualified Written Request," ("QWR"). Id.

Presumably, the FAC's statements related to the RESPA violations at the time of closing are not directed at Aurora, as Benham does not allege that Aurora was involved in any way with the origination of the loan, and indeed claims that Aurora was a "third party stranger" to the transaction. See Opp'n at 13. However, the FAC does allege that the QWR was sent to Aurora. FAC ¶ 33. This would implicate the requirements of 12 U.S.C. § 2605(e)(2), which requires loan servicers to respond to QWRs.

Under this section, a servicer must respond "[n]ot later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request, . . . the servicer shall" either make appropriate corrections to the borrower's account, or provide a written explanation or clarification as to the reason the servicer believes the account information to be correct, and provide contact information for followup. 12 U.S.C. § 2605(e)(2).

Even assuming that Aurora did not respond in a timely manner to the QWR, the FAC does not fully state a claim for violation of RESPA. In particular, it is not clear how Benham was injured by this purported violation. The section of RESPA that is relevant to this claim provides a cause of action only for the recovery of damages and costs resulting from the violation. See 12 U.S.C. § 2605(f). Although this section does not explicitly set this out as a pleading element, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim. For example, in Hutchinson v. Delaware Savings Bank FSB, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." 410 F. Supp. 2d 374, 383 (D.N.J. 2006); see also Singh v. Wash. Mut. Bank, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and

8

1 attorney fees" (quotation marks and citation omitted)). "[C]ourts
2 have interpreted this requirement liberally." Yulaeva v.
3 Greenpoint Mortg. Funding, Inc., No. 09-1504, 2009 U.S. Dist.
4 LEXIS 79094, *44 (E.D. Cal. Sept. 9, 2009). For example, in
5 Hutchinson, plaintiffs were able to plead such a loss by claiming
6 that they had suffered negative credit ratings as a result of
7 violations of RESPA. 410 F. Supp. 2d at 383. This pleading
8 requirement has the effect of limiting claims to circumstances in
9 which plaintiffs can show that a failure of notice has caused them
10 actual harm.

11 Benham has not shown that she was harmed by the alleged
12 notice failure. The FAC only offers the conclusory statement that
13 "Plaintiff has suffered and continues to suffer damages and costs
14 of suit." FAC ¶ 79. Benham has not attempted to show that the
15 alleged RESPA violations caused any kind of pecuniary loss
16 (indeed, her loss of property appears to have been caused by her
17 default). For this reason, the claim must be DISMISSED WITH LEAVE
18 TO AMEND.

19 The briefing has revealed another problem with this cause of
20 action. It seems that Aurora may have in fact responded to the
21 QWR in a timely manner. If the QWR was sent on March 3, 2009,[4]

---

[4] In fact, it is not clear when Plaintiff sent the QWR, or when the sixty-day response period would have begun to run. According to the FAC, the QWR was sent on March 3, 2006. FAC ¶ 33. However, the loan was not completed until August 2, 2006. FAC ¶ 31. The QWR "included a demand to cancel the Trustee Sale," even though the Notice of Trustee Sale was not sent to Plaintiff until January 27, 2009, nearly three years later. FAC ¶ 44. The claimed date therefore makes no sense. Notably, Plaintiff's original Complaint claimed that the FAC was sent on March 3, 2009. Docket No. 1 ("Compl.") ¶ 24. Benham does not explain this change or the nonsensical date. Aurora notes this issue, and reasonably

then it presumably would have been received by Aurora several days thereafter, and Aurora would have had sixty days (excluding weekends and holidays) to respond.  12 U.S.C. § 2605(e)(2). Aurora claims that it responded by June 3, 2009, and has requested that this Court take judicial notice of the response.  See Aurora's Request for Judicial Notice ("Aurora's RJN"), Docket No. 23, Ex. 2.[5]  In her Opposition, Benham shifts from arguing that the response was never sent, to instead arguing that the response was inadequate -- an argument that clearly lies outside of the scope of the FAC.  Opp'n at 17-18.  This raises the suspicion that Benham's attorney may not have bothered to check whether Aurora had responded to the QWR before filing the FAC.  Benham and her attorney may not amend this claim, or any other cause of action, before they have thoroughly investigated the underlying factual basis and determined that the claim is actually warranted.

**4. Fraud**

Plaintiff's sixth cause of action alleges fraud against all Defendants.  FAC ¶¶ 91-98.  Allegations of fraud "must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  The plaintiff must include "the who, what, when, where, and how" of the fraud.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  "The

---

addresses the allegation as though the QWR had been sent on March 3, 2009, as Benham originally alleged.  Mot. at 11.  Benham raises no objection to this reading, and the Court agrees that this is the most reasonable and charitable reading of the FAC.

[5] Benham has not opposed the Request for Judicial Notice with respect to this exhibit.  Because the Court does not ultimately resolve Benham's RESPA claim on this basis, it need not address this Request.

10

plaintiff must set forth what is false or misleading about a statement, and why it is false." Decker v. Glenfed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994). "[W]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud." Ricon, 2009 WL 2407396, at *3 (quoting DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

Just as the Court concluded with respect to MERS, Sept. 1st Order at 7-8, the FAC fails to state specifically what role Aurora played in the alleged fraud, what statements Aurora made to Benham, or who or when Aurora made any particular representation to Benham. Simply alleging in a conclusory manner that Aurora "played a key part in a scheme" does not suffice to state a claim with particularity. The FAC identifies no misrepresentations made by Aurora. This is particularly troubling where Benham has not alleged that Aurora participated in any way in the origination of the loan at the heart of this dispute.

Benham claims that the standards for pleading fraud should be relaxed where the defendants may know the details of the fraud better than the plaintiff. Opp'n at 19. It is true that "the requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy, or when the facts lie more in the knowledge of the opposite party." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (Ct. App. 1991). However, this exception is inapplicable where a

11

defendant has "no more reason to know who made the allegedly false representations to" the plaintiff than does the defendant. Id. The FAC offers no reason to suspect that Aurora would be in a better position to know the details of the allegedly fraudulent misrepresentations made to Benham than Benham would be. This cause of action must be DISMISSED WITHOUT PREJUDICE.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's ninth cause of action alleges that all Defendants breached the implied covenant of good faith and fair dealing. FAC ¶¶ 110-118. This cause of action must be dismissed as to Aurora for the reasons that it was dismissed as to MERS. See Sept. 1st Order at 8-10. Namely, Benham has failed to allege any contract between herself and Aurora. Nor does Benham allege that Aurora actually breached a contract. As to Aurora's participation in the foreclosure, the covenant of good faith and fair dealing cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement." Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 374 (1992). The Court DISMISSES Plaintiff's ninth cause of action against Aurora WITHOUT PREJUDICE.

### 6. Wrongful Foreclosure

Plaintiff's tenth cause of action is for wrongful foreclosure. FAC ¶¶ 119-130. Plaintiff claims that foreclosure was wrongful because: 1) Aurora and Weiss did not possess the note for the loan; 2) the Notice of Default was defective and not in accordance with California Civil Code section 2923.5; and 3)

12

Defendants failed to suspend the foreclosure as purportedly required by the U.S. Treasury Department's program guidelines for the Making Home Affordable Program. Id.

Aurora claims that Benham cannot bring a wrongful foreclosure cause of action without tendering her indebtedness. Mot. at 6-7. In California, a claim for wrongful foreclosure generally cannot go forward unless the plaintiff has at least alleged a credible offer to tender indebtedness. See Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (Ct. App. 1996) (borrower "required to allege tender of the amount of . . . [lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure"); Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (Ct. App. 1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). Benham responds that she is not required to offer to tender her indebtedness because she is attempting to attack the validity of the underlying debt. Opp'n at 12. This does not appear to be the case. The FAC alleges that Benham received a loan, FAC ¶ 31, and judicially noticeable documents confirm that Benham defaulted on this loan, see Notice of Default. In her Opposition, Benham "acknowledges that money is owed to someone . . . . ." Her claim that she is challenging the validity of the debt is not credible. Benham also claims that she has "no idea how much or to whom to tender." Opp'n at 12. The Notice of Default provided this information when it was initially issued, and Benham

13

cannot wish this away by suggesting, without support or a reasonable factual basis, that this judicially noticed document may have been fraudulent.

Finally, Benham argues that the Court may not impose this bond requirement when it would be inequitable to do so. Opp'n at 12. The Court acknowledges that, once Benham has alleged a credible tender offer, the Court has equitable discretion to determine how and when the amount must be tendered. See Avila v. Stearns, No. 08-419, 2008 U.S. Dist. LEXIS 31813 (C.D. Cal. Apr. 7, 2008) (court has discretion to modify rescission procedures regarding tender of indebtedness, and "[t]his discretion can be exercised in favor of lenders, by requiring borrowers to make a showing of their ability to pay a lump sum, or in favor of borrowers, by allowing them to fulfill their tender obligation by making payments over time"). However there is no record that Benham ever made an offer to tender anything to anybody.

Even if Benham could overcome her failure to offer to tender her indebtedness, this cause of action would fail. First, neither Aurora nor Weiss needed to possess the note in order to initiate foreclosure proceedings. As this Court previously noted, "[o]ther courts in this district have summarily rejected the argument that companies . . . lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool." Sept. 1st Order at 8 (citing Hafiz v. Greenpoint Mortgage Funding, Inc., No. 09-1729, 2009 WL 2137393, at *2 (N.D. Cal. July 16, 2009)).

Second, Benham has not stated a claim based on Aurora's

14

purported violation of section 2923.5(b) of California Civil Code. The Notice was recorded on May 14, 2007. Section 2923.5 did not come into effect until July 8, 2008, and it states that if a notice of default was issued prior to the statute taking effect, then the "mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration" as to the efforts made to contact the borrower. Cal. Civ. Code § 2923.5(c). The operative Notice of Sale included a Declaration of Compliance as to section 2923.5(b), and Benham has not explained or identified any deficiency with this document. See Second Notice of Trustee's Sale at 3. Unless and until Benham explains this point more clearly, neither the Court nor Aurora should be forced to puzzle it out.[6]

Finally, this Court is skeptical that Benham can bring a private cause of action for violation of certain guidelines issued by the U.S. Treasury Department, which Aurora was purportedly bound to as a recipient of funds under the Troubled Asset Relief Program ("TARP"). FAC ¶¶ 125-27. Neither party has briefed this

---

[6] Benham also alleges, on information and belief, that the 2007 Notice of Default "had been cured or lapsed" by the time of the foreclosure, was thereby invalid, and that Defendants were required to issue another Notice of Default prior to foreclosure. FAC ¶ 123. The Court is intrigued by this argument, however in its current form this amounts to nothing more than an unsupported legal conclusion, to the effect that the Notice of Default was void. How or why had it lapsed? Was it cured because Benham had managed to become current on her debt for a period between the Notice of Default and the foreclosure? As these allegations stand, the Court need not accept them as true, even at the motion to dismiss stage. See Iqbal, 129 S.Ct. at 1949-50. If Benham does plead facts to support her argument that there was no operative Notice of Default prior to the sale, this would appear to be a violation of section 2924, rather than 2923.5(b), of the California Civil Code.

15

issue, and this Court has found only a single case that has addressed this point. It concluded that "12 U.S.C. § 5229(b)(1) shows Congress' intent to limit private action under TARP solely to actions against the Secretary as provided in § 5229, and not extend any obligations or liabilities to those receiving TARP funds." Pantoja v. Countrywide Home Loans, Inc., No. 09-1615, 2009 U.S. Dist. LEXIS 70856, *13-14 (N.D. Cal. July 9, 2009). Given Aurora's almost complete failure to brief this issue, the Court will not resolve this at this time. The cause of action may be dismissed for separate reasons, discussed above. Benham's tenth cause of action for wrongful foreclosure is DISMISSED WITH LEAVE TO AMEND.

### 7. Unfair Business Practices

Plaintiff's seventh cause of action alleges that all Defendants have violated California Business and Professions Code sections 17200 et seq., which prohibits any unlawful, unfair or fraudulent business act or practice. FAC ¶¶ 99-103. This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and "[a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (Ct. App. 1993). The Court has already dismissed all of Benham's other causes of action against Aurora, and Benham has not provided an independent reason why Aurora's acts were fraudulent or unlawful. The Court therefore DISMISSES the Unfair Business Practices claim against Aurora with leave to

16

1 amend.[7]

**B. MOTION TO STRIKE**

Aurora seeks to strike all references in the FAC to Benham's purported entitlement to punitive damages. See Mot. to Strike at 2. Although the Court has already found that Benham has not stated a claim that would serve as a basis for any damages as to Aurora or MERS, let alone punitive damages, the Court has not had an opportunity to address most of the allegations within the FAC as to other Defendants. The Court therefore DENIES Aurora's Motion to Strike for the same reasons that it denied MERS' Motion to Strike. See Sept. 1st Order at 11-12.

**V. CONCLUSION**

For the reasons stated above, the Court GRANTS Aurora's Motion to Dismiss, and DISMISSES the following causes of action:

1. The third cause of action for negligence is DISMISSED WITHOUT PREJUDICE as to Aurora;
2. The fourth cause of action for violation of RESPA is DISMISSED WITHOUT PREJUDICE as to all parties;
3. The sixth cause of action for fraud is DISMISSED WITHOUT PREJUDICE as to Aurora;
4. The seventh cause of action for violation of California Business and Professions Code sections 17200 et seq. is DISMISSED WITHOUT PREJUDICE as to Aurora;
5. The ninth cause of action for breach of implied covenant

---
[7] The Court does not reach Aurora's argument that this section is preempted by federal law. Mot. at 13-16.

17

           of good faith and fair dealing is DISMISSED WITHOUT PREJUDICE as to Aurora;

6.    The tenth cause of action for wrongful foreclosure is DISMISSED WITHOUT PREJUDICE as to all parties.

In addition, Benham's second cause of action for violation of the California Rosenthal Act remains DISMISSED as to all parties. To the extent that it is based on act of foreclosure, it remains DISMISSED WITH PREJUDICE. To the extent that it is based upon other acts, it is DISMISSED WITH LEAVE TO AMEND.

This Court previously directed Benham's attorney to not amend the FAC until after the filing of this Order. <u>See</u> Sept. 1st Order at 12. Benham is now granted leave to amend the FAC, as appropriate in light of both this Order and the September 1st Order. A second amended complaint may be filed no later than thirty (30) days after the date below.

Aurora's Motion to Strike is DENIED.

IT IS SO ORDERED.

September 30, 2009

                                                                      _____
                                                                    UNITED STATES DISTRICT JUDGE